Chief Justice Robertson,
delivered the opinion of the court.
This is an action of áetinue, by J. P. Smart vs. Betsy Baugh, for a female slave named Catharine. On the general issue, a verdict and judgment were rendered for the defendant.
Smart claims the slave in right of his. wife, (a daughter of William and Eleanor Johnson,) inconse-quence of an alleged, parol,gilí,. by her grandfather, Peter Depp, to her, of a female slave, Nancy, the mother of Catharine.
Betsy Baugh derived her possession and, claim, from the will of Mrs. Johnson, her grandmother, and the mother of Mrs. Smart.
The record states, that on the trial, evidence was introduced by the plaintiff, “conducing” to prove that Peter Depp, gave Nancy to Angel Marshall Johnson, (now Mrs. Smart) in Virginia, about the year 1790, *364 when she (the donee) was-an infant; that Nancy was delivered to Wrn. Johnson, the father of the donee; but whether Mrs. Johnson was, by (he- terms of the gift, to have the use and possession of the slave, until Angel Marshall Johnson should attain twenty-one years of age, or during her own life, is left in doubt,.
It was also proved that Smart married Angel Mhr* shall Johnson,.about the year 1811, and that Catha-rine-is the daughter of- Nancy, and was born since-1790.
The record-states,, also, that William Johnson-remained in the-possession of Naney and-her children, until his death, in 1819; whena portion of his estate passed, by his will, to bis children, and the residuum to his surviving wife, the mother of the plaintiff’» wife; and that Mrs. Johnson, who died in 1826, by her will, distributed her estate among her children, and devised to Betsy Baugh, her grand daughter, the slave Catharine.
And it is stated in the record, that evidence was introduced by the defendant, “conducing” to show that Peter Depp gave Nancy to. Mrs. Johnson, who, together with her husband, had held her and her issue, as their own absolute property, never recognizing any right .thereto, in Mrs. Smart, and that Smart and wife, who were-devisees in the will of Johnson, and also in that of Mrs. Johnson, took, and still enjoyed the property devised, to them by each of the wills.
On the motion of the defendant’a.counsel,the court instructed the jury:
1st. That the plaintiff could not claim under and against the wills, and' that if he had accepted and held property under one or both of them-, and to which he had no other valid right, than what he so derived, they should find for the defendant.
2d. That if those from whom the defendant derived her claim, had been in possession of Catharine more than five years before the institution of this suit, holding her adversely to the claim of the plaintiff, his right was barred, and he could not recover.
Each of these instructions is substantially conformable to the law, which must decide the merits of this case, as they are exhibited by the foregoing facts.
Devisee hold-^erwil),^ cannot recov-^in^any°property devised by it to other8"
in detinue, statute oflim» itations maybe given in evidence under general issue.
*365 1st. As a general rule of law, itii well-settle.d5.that a person who claims property under a will, cannot recover on a claim adverse to the will; other property, which it devises to another person.... This principle is familiar to the chancellor; and in a court of common law, it must have some effect. A.devisee cannot be allowed to hold, in virtue of. the will, property devised to him, and maintain a suit, also, to recover any thing, which the same-will devises to another. He cannot defeat the disposition where it is in his power, and yet take under the will. A condition is implied, either that the devisee shall part with his own estate, or shall not take the bounty.,. II. Mad. Chy. 40-1.
A devisee will be compelled by the chancellor, to, make bis election to surrender all claim under the-will, or all which he may have in opposition to its. provisions. III. Vesey, 385; VII. Ib. 480; XIII. Ib., 220; Amb. 182.
Therefore, if A. devise to B, property which belongs to C, and also devises other property to C, C must elect to-yield his. right to the property devised to B, or he cannot hold that which is devised to himself. II. Mad. Chy. 44; II. Konblanque, 325, and the cases there cited by the annotator; and Groves vs. Kenon and wife, VI. Monroe, 635.
A common law court cannot compel the party to elect; but,.if he shall haye elected before he appeals to it for its aid, it mil hold him to' the choice which he had made, by withholding its remedies. Therefore, if in this case, Smart took and held any thing devised to him, and to which he had no other valid claim than that imparted by the will, lie has thdreby waived all right which he may have had, at the time of his election, to the slave now in contest. Being'presumed to know the principle of equity, which lias been stated, he must, therefore, be presumed to have surrendered his prior claim in his own right, when he approved the will, and took property d.evised-to him by it. And, therefore, if he did so take under the will, he can no longer assert any right in opposition to the will.
2d. The statute of limitations may avail a defendant in detinue, under the general issue. The plea *366 is in th,e present tense (non detinet,) and under this, issue, any thing, (except a pledge) which will show a' better right in the, defendant, than in the plaintiff, may be admitted as competent evidence.
Five years uninterrupted adverse possession of slave, not only bars remedy of real pwner, but vests absolute legal right in possessor.
Time does not pay debt, but may vestright t» property.
The plea puts in issue, the plaintiff’s right. Five years uninterrupted,, adverse possession of a slave, not only bars the remedy of the claimant out of possession, but vests the absolute legal right in the possessor. Therefore, proof of such possession, may show that the claimant has no right to the slave, and therefore,,cannot recover.
Consequently, it would seem to result, from the. reason of the case, that the adversary possession may be proved under the general issue.
The sanje reason does not apply to assumpsit, because the statute of limitation does not destroy the. right uin foro conscientice,” to the benefit ofthe assump-sit, but only bars the remedy, if the defendant choose to rely on the bar. Time does not pay a debt. But time may vest a right to property.
It was said by Holt, in one case, (Draper vs. Glas-sop, I. Ld. Ray’d. 153}that the statute of limitations, might be given in evidence, under the plea of i(nil debetand the following is the reasoning by which he attempted to maintain his opinion: “For the statute has made it no debt at the time of the plea pleaded, the words of which are in the present tense.” “But in case on non assumpsit, the statute of limitations cannot be given in evidence, for it speaks of a time, past, and relates to the time of making the promise.”“But upon nil debet pleaded, the statute is -good evidence, because the issue is joined,per verba de presenti, and it is no debt at this time, though it was a debt.”-
This reasoning is applicable to the plea of non, detinet, in an action of detinue for property, and. therefore, in detinue, it ought to be conclusive. But we doubt its application to the plea of nil debet, and therefore, could not admit that the conclusion of Chief Justice Holt, is logical, or consistent with the reason and analogies of the law. His deduction is the necessary consequence of his premises. For if, at the time of pleading nil debet, the statute of limi- *367 íáüons had extinguished the debt'; and, in his guage,made it no debt, it would certainly be allowable to show the fact, under the plea that the. did not, at the time of pleading, owe the debt. This is perfectly true in detinue for a slave, because, id such a cáse, the lapse of time has divested the plaintiff of his right .of property, and vested it in the defendant. Stanley vs. Earle, V. Littell, 281. And therefore, the lapse of time may, in such a case, be given in evidence, under the general issue, to show that the plaintiff has no right to,the property, and that the defendant has a perfect right. But it is not so in debt, because the statute of limitations does not destroy, nor pay the debt. This has been abundantly established by authority, since the time of Holt. A debt barred by time, isa sufficient consideration for a new assumpsit. The statute of limitations only disqualifies the plaintiff to recover his debt by suit, if the defendant rely on time in his plea. It is a personal privilege, accorded by the law, for reasons of public expediency. And the privilege can be asserted only by plea; otherwise, that which, by barring the legal remedy, would conclude the legal right, will not affect either. The distinction suggested by Holt, between nil debet and non-assumpsit, does not sustain the discrimination which he makes in the admissibility of evidence under the two issues. For although non assumpsit is in the past, and nil debet is in the present tense, yet it is known to be the law, that whatever will show that the defendant does not owe any thing at the trial, will be admissible evidence' under the plea of non-assumpsit; and therefore, if the statute of limitations would be admissible under nil debet, it would be equally so under non-assumpsit. See I. Cranch, 465, appendix.
“Whatever owefnothingj #i trial, ad-agSsibl„ndlr noTassmipsit although it ia in past tense»
We, therefore, consider Holt’s opinion as to the admissibility of evidence of limitation, under nil debet, as unsupported by principle, and as overruled by subsequent authorities. But his reasoning and his opinion, apply necessarily to “non deiinet,” and so far it is good law, and has not been overruled. In Virginia^ it has been decided that the statute of limitations may be given in evidence, under the general issue, in detinue for property. See Elam vs. Bass’s executors, IV. Muuford.301.
'indebt and assumpsit, itation must' be pleaded,
Five years advérsenos-1* session of slave, not Telb bu/dé-itoys right. '
And such pos-enable posses-sortomain-tain action rs ave.
Under ‘nil debit and non-assumpsit, lapse of tibie may be admissible evidence, as far as it may tend to prove the fait of payment, but not as a legal and conclusive bar to the action. In detinue, the limitation may be proved under the general issue, as conclusive evidence of the defendant’s right to the property, unless the plaintiff can evade its effect, by showing some suspension of its operation.
In debt and assumpsit, the statute must be'pleaded, Balantine on Lim, 210. The statute “does not destroy the debt, it only takes away the remedy, and the ^e^tor may either take advantage of the statute, or he may waive the statute.” Ib. 208; Burrows, 2630.
But the adverse possession of a slave, riot only barg the remedy, but destroys the right, unless the effect *'me can orated by the proof of some saving disability. It might seem just and eligible, therefore, to plead the limitation,'so that the-plaintiff might ^avc au opportunity to reply, some fact showing disability. But neither authority nor principle, seems to require such a plea, in such a case, any more than they require a plea of title acquired by contract, which might be avoided by infancy, or other disability.
As five years adverse possession of a slave, may ves(; guch a title as will enable the possessor to main* tain an action lor the slave, the same right, so acquir* ed, may be proved by'him under the general issue, in a gu¡(. brought against him f >r the slave, by the person against whom he had held adversely.
The objection made to the competency of Mrs. Baugh as a witness for the defendant, should not, under all the circumstances, entitle the plaintiff to a new trial. Her interest was remote and contingent. It does not appear that the contingency had occurred, on which it depended. It does not appear what her testimony was, or what that of the other witnesses for the defendant was. It would seem, that whatever her testimony was, whether important or unimportant, the verdict was according to the justice of the case, and the law which must govern it, and that a new trial would necessarily result in a similar finding, on one or both of the specific grounds of defence; on which we have decided.
Denny and Monroe, for plaintiff; Crittenden, for defendant.
Petition fora Te"liearmS'
Wherefore, we are not inclined to reverse the judgment, on the ground of Mrs. Baugh’s alleged incompetency.
Judgment affirmed.

The counsel for Smart, presented the folloitiing petition for a re- hearing.

■ We will not urge further on the court, the necessity of the plea of the statute of limitations, because the question seems to have been fully considered and the principle is distinctly stated, so that all can understand it; and the cases on this point will be a sure precedent in future. It may, however, be remarked, that the plea of nil debet relates to the time of the commencement of the action, and proof that there was no debt then owing, supports the plea. Hard’s. Rep. 459. The plea of non detiriet, .does not thus relate to the time of the commencement of the suit, because proof of wrongful detention, years before the suit was commenced, will support the action, though it be shown by the defendant-, there was no detention, wrightful or wrongful, at the date of the writ. But it is otherwise in relation to the competency of the witness. We do not know whether the court decides it is necessary in taking an exception on 'the trial of the 'cause, before a jury, to the decision of the judge, erroneously admitting an interested witness, to depose that we shall slate the testimony which the witness will give after he is shown in chief, and after the exception admitting him to be sworn, may have been sealed and enrolled, or whether the practice may be as heretofore? Is it considered he-cessary that the party objecting to the witness being sworn, shall set out the other testimony afterwards, or before given on the trial, by the party who examined the incompetent witness? And we are also unable to discern whether the court determined that the error in admitting an interested witness to depose, may be available or not, according to the strength or weakness of the evidence in the cause, though the error committed bv the judge, on the trial, is then challenged. *370 and the point made and reserved. These are deemed important points of practice, and, therefore, a rehearing is respectfully moved.
Beüfion for re-hearing.
On the ground of the competency of the witness* we will but state the facts, so that the case and point of law decided, or to be decided, may appear. Smart, on the next day, after instituting this action, filed his bill in chancery, alleging he feared the defendant might remove the slave, so that the judgment would be ineffectual, when recovered, and obtained an order, requiring the sheriff, on executing the subpoena, to demand of the defendant, bond with security, for the forthcoming of said slave, to be subject to the order •and decree, in the penalty of $1000; and if the defendant refused to give such bond, the sheriff was ordered to take the slave out of his possession, on the complainant’s giving bond,&c. In pursuance of this order the sheriff took a bond of the defendant, with 'the witness a security, payable to the plaintiff, in the penalty of $1000, with condition in substance, that the defendant should not remove or dispose of said -slave, but hold her, according to the command of the above order and purpose of the original bill. And this witness was bound in this bond, when offered as a witness. If obligors are interested in the performing or causing to be performed, the conditions of their bonds, or in reducing the damages for a breach of the condition, to a nominal sum; this witness was interested in causing a judgment for the defendant, in this action; and tiie interest was, in its nature, direct. The judgment for defendant, her testimony aided iri procuring, surely did directly reduce the extent of her obligation to plaintiff.
Sureties in injunction, replevin, bail, supersedeas, nt exeat, appeal, traverse and all other such bonds, have been ever held interested in the event of the cause; and so was this witness.
.The interest of the warrantor, on a sale of lands or goods, renders himself incompetent as a witness for his vendee, in any action, when the judgment to be rendered would be evidence to prove the fact, that such a judgment was recovered, though no recovery could be had against the witness, without proving, by other testimony, the recovery was by paramount title.
Petition- for a re-hearing,
But as to the points of practice: There-was no motion here, for a new trial, in the case of Freeman vs. Luekett, it was insisted, with great confidence, that in as much as there was no exception taken on the trial, to the decision of the court, rejecting the witness, and the matter was relied on, only in a motion for a new trial, which is always an appeal to the sound discretion of the court, there was'no error in the case, yet the court reversed the judgment of the circuit court, and ordered a new ..trial,- against the decision of the judge who presided, for the purpose of letting in the testimony of a witness, where the nominal plaintiff had, but a few days before, presented the witness to the court as the real party in interest, and, therefore, the proper person to make the affidavit, on a motion for a continuance of the cause; and all this, without the record giving any intimation of what the parly proposed to prove by the rejected-witness; and now, the question is, shall-., the party who objected to the incompetent witness, be required" to prove the witness gave material evidence, after the objection had been made and overruled.? If we had relied on the error in admitting, the witness, as a ground for a new trial, then there would have-been-a likeness between this case and that of Freeman vs. Luekett, above cited, and.if the counsel; were right and the court wrong, in..that case, which would be au supposition against law, we would.be wrong in sup-, posing there is error in this-matter. But let who may be tight in that- case, .we are right here, unless it is better not to except to the decision given on the trial, but lie back, and set the errors down as the ground of- ’ a motion for a new-trial. On this question", see Thomas, and wife vs. Tanner, VI. Monroe, 60-1, and retaily other cases-found under the heads of error, ne.w trials,’, exceptions, practice, &c.' In objecting to .a .witness, the regular course is supposed to be, to object to his being sworn,.in chief, and then to prove the alleged. grounds of objection, which is done, either by the.witness, on his voire dire, or by other evidence, as .the party objecting may elect. After the competency of the-witness is tried,-and the-court has pronounced the decision rejecting or. admitting the witness to be , sworn, in chief, then the exception may he taken. In *372 this it must appear, the witness was sworn in chief, and,perhaps, gave evidence. But there is no case in any of the books, in which the bill of exceptions s1j0Ws what the rejected witness could have- sworn, nor what the erroneously admitted witness did swear. If' an improper question is asked a competent witness, the bill of exceptions must show that the answer was given in evidence; so here the bill of exceptions must show the witness did depose. If the witness deposed to matters clearly irrelevant, and such as could not have had- any effect, legitimately, on the verdict of the jury, then, instead of the error of the court, in admitting the witness, being cured, there was a double error committed; for to admit irrelevant matter to be given in evidence, by a competent witness, is error,, if the exception be taken on the trial, if there be any truth in these doctrines, there can be no necessity that a bill of exception should prove that the incompetent evidence produced the verdict.
Petition fora re- earing.,
Where this court is revising the decision, on motions for new trials, the main question is, on the truth and-consciousness of the verdict. But when the error assigned.is in a decision of a point of law, the sole question is, was the law pronounced or not? And, therefore, it is insisted here, the court cannot consider whether the evidence of the incompetent witness did produce the verdict or not. We have assigned no error in the verdict, and, therefore, it cannot be examined. We complain of the error of the judge.
Parties are entitled to the trial of their disputes, on questions of fact, by an impartial jury', on the testimony of disinterested witnesses, deposing to competent matter, and if the party insists on his right, in. apt time and due form, as was done here, by an exception on the trial, he must have redress. If interested witnesses are to depose to incompetent matter, against the party’s protestations, and then the court are to decide whether the jury might have rendered the same verdict without the incompetent testimony; all rules of evidence may be dispensed with, and the trial by jury will be no longer worth prosecuting.
It was not supposed, in Freeman vs. Lucketts, that the verdict would have been the same on the tests.. *373 snony of tbe rejected witness, as without him; no one knows what'he would have sworn. Here the witness did depose, and the court does not know that every fact material to the defence of the-defendant, was maintained by the testimony of this interested witness alone.
Response to the petition
Chief Justice Robertson delivered the following response to the petition.
Modern decisions lean in favor of the competency of a witness when the interest is doubtful. The reasons for not regarding the refusal to reject Mrs. Baugh, as sufficient to reverse the judgment, are distinclly' stated in the opinion, and are to be understood all together as they are expressed.
It is very doubtful whether Mrs. Baugh had any direct interest in the event of the suit. She undertook, by her bond, only that the slave' should not be removed beyond the jurisdiction of the court, before the trial at law. It was not even hinted that the slave had been removed. It is not clear that the bond was obligatory.
Petition overruled.